**[ORAL ARGUMENT HELD DECEMBER 2, 2019]**

**No. 18-5284**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

CASSANDRA M. MENOKEN,

*Plaintiff-Appellant,*

v.

JANET DHILLON

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Columbia
No. 1:16—cv-2480
Hon. Rosemary M. Collyer

---

**BRIEF OF APPOINTED AMICUS CURIAE SUPPORTING APPELLANT**

---

Matthew M. Collette
R. Craig Kitchen
Massey & Gail LLP
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
(202) 795-3326
mcollette@masseygail.com
rckitchen@masseygail.com

*Attorneys for Amicus Curiae*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

GLOSSARY..........................................................................................v

ISSUES PRESENTED.............................................................................1

SUMMARY OF THE ARGUMENT .......................................................1

ARGUMENT .........................................................................................3

      I.     CLAIMS OF INTERFERENCE UNDER THE AMERICANS WITH DISABILITIES ACT SHOULD BE GOVERNED BY THE SAME STANDARD AS CLAIMS OF INTERFERENCE UNDER THE FAIR HOUSING ACT. ..................................................3

      II.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES INTERFERENCE UNDER THE STATUTE. ....................................10

CONCLUSION....................................................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES[*]

**Cases**

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
  548 U.S. 291 (2006)..........................................................................................14

*Atchison v. Bd. of Regents of the Univ. Sys. of Georgia*,
  No. 16-17086, 2020 WL 733043 (11th Cir. Feb. 13, 2020)...............................6

*Baloch v. Kempthorne,*
  550 F.3d 1191 (D.C. Cir. 2008)...........................................................................4

*\*Brown v. City of Tucson*,
  336 F.3d 1181 (9th Cir. 2003) ......................................................... 2, 6, 7, 9, 15

*Doak v. Johnson*,
  798 F.3d 1096 (D.C. Cir. 2015)...........................................................................8

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997)...........................................................................14

*Fogleman v. Mercy Hosp., Inc.*,
  283 F.3d 561 (3d Cir. 2002) ............................................................................6, 9

*\*Frakes v. Peoria School Dist.*,
  872 F.3d 545 (7th Cir. 2017) ................................................................... 2, 9, 10

*Indep. Bankers Ass'n of Am. v. Farm Credit Admin.*,
  164 F.3d 661 (D.C. Cir. 1999)..............................................................................5

*Mich. Prot. & Advocacy Serv. v. Babin*,
  18 F.3d 337 (6th Cir. 1994) .................................................................................9

*Minter v. District of Columbia*,
  809 F.3d 66 (D.C. Cir. 2015)................................................................................8

*Mogenhan v. Napolitano*,
  613 F.3d 1162 (D.C. Cir. 2010)...........................................................................4

---

[*] Authorities upon which we chiefly rely are marked with asterisks.

*Mondzelewski v. Pathmark Stores, Inc.*,
  162 F.3d 778 (3d Cir. 1998) ...............................................................6

*Pantazes v. Jackson*,
  366 F. Supp. 2d 57 (D.D.C. 2005)....................................................12

*Revock v. Cowpet Bay W. Condo. Ass'n*,
  853 F.3d 96 (3d Cir. 2017) ................................................................8

*Samaritan Inns, Inc. v. District of Columbia*,
  114 F.3d 1227 (D.C. Cir. 1997)........................................................10

*Smith v. District of Columbia*,
  430 F.3d 450 (D.C. Cir. 2005)..........................................................10

*\*Walker v. City of Lakewood*,
  272 F.3d 1114 (9th Cir. 2001) .......................................................8, 11

**Statutes**

29 U.S.C. § 158 ...................................................................................9

29 U.S.C. § 791 ...............................................................................1, 3

29 U.S.C. § 794 ...................................................................................3

42 U.S.C. § 12101 .............................................................................10

42 U.S.C. § 12112 ...............................................................................7

42 U.S.C. § 12131 ...............................................................................3

42 U.S.C. § 12132 ...............................................................................3

42 U.S.C. § 12133 ...............................................................................3

42 U.S.C. § 12134 ...............................................................................3

*\*42 U.S.C. § 12203 .......................................... 1, 3, 4, 6, 7, 8, 9, 12, 13, 16

42 U.S.C. § 3617 ....................................................................... 2, 5, 8

**Regulations**

29 C.F.R. § 1630.4 ...............................................................................7

**Other Authorities**

EEOC Guidance, https://www.eeoc.gov/laws/guidance/retaliation-qa.cfm........7, 13

H.R.Rep. No. 485(II), 101st Cong., 2d Sess. 138 (1990), *reprinted in* 1990
U.S.C.C.A.N. 303, 421).......................................................................................9

*\*Merriam-Webster Online Dictionary*, available at https://www.merriam-
webster.com/dictionary/interfere%20with. ...................................................7, 11

*Webster's Third New Int'l Dict.* 1178 (14th ed.1961) ...............................................8

# GLOSSARY

| | |
|---|---|
| ADA | Americans with Disabilities Act |
| EEOC | Equal Employment Opportunity Commission |
| FHA | Fair Housing Act |
| NLRA | National Labor Relations Act |

# ISSUES PRESENTED

Pursuant to this Court's order of December 20, 2019, this brief addresses the following issues:

1.      What is the proper legal standard for evaluating a claim of "interference" under 42 U.S.C. § 12203(b) and 29 U.S.C. § 791(f)?

2.      Do the allegations of the amended complaint state such a claim?

# SUMMARY OF THE ARGUMENT

1. 42 U.S.C. § 12203 contains two operative provisions.  Subsection (a) prohibits retaliation, using language identical to that of the retaliation provision in Title VII of the Civil Rights Act.  Accordingly, courts use the retaliation standard in Title VII in applying subsection (a).

Subsection (b) is different, and broader, than subsection (a).  It makes it unlawful to "coerce, intimidate, threaten, or interfere" with any individual in the exercise of "any right granted or protected by this chapter."  Despite the differences in the two provisions, the district court incorrectly treated them as if they were identical.

As many courts have recognized, subsection (b) operates independently from subsection (a), and sweeps more broadly.  While subsection (a) incorporates the general prohibition against "discrimination" in the "terms, conditions and privileges of employment" (including the requirement that the employer take an

"adverse action" against the employee), subsection (b) incorporates the plain meaning of the term "interfere," which encompasses action that delays or makes something more difficult.

Because subsection (b) is identical to the anti-interference provision of the Fair Housing Act ("FHA"), 42 U.S.C. § 3617, this Court should adopt the approach of the Seventh and Ninth Circuits, which have held that the standard used in the FHA should be used in interpreting interference claims under the Americans with Disabilities Act of 1990 ("ADA") and Rehabilitation Act. *See Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003); *Frakes v. Peoria School Dist.*, 872 F.3d 545, 550 (7th Cir. 2017).

2. Under the correct standard, plaintiff's complaint adequately states a claim for interference. She was engaged in protected activity, having requested accommodation for her disability. And the amended complaint alleges that EEOC officials delayed her accommodation request, interfered with the investigation, and advised witnesses that they need not respond to the investigator's attempts to obtain information. *See, e.g.,* A-11, A-20. That activity fits any plain-language definition of "interference."

The district court's holding that the law does not permit a claim concerning the sufficiency of the process is wrong. The plain language of subsection (b) protects against interference with *any* right protected by the statute, including

procedural rights.  And the government's contention (based upon EEOC guidance) that plaintiff must show that she was "coerced" into relinquishing a right to which she was entitled is inconsistent with the statutory text, which makes it unlawful to coerce *or* interfere.  Finally, plaintiff's allegations that EEOC's interference exacerbated her fragile condition and increased her stress and anxiety suffice to show that she has suffered a sufficient injury under the statute.

## ARGUMENT

**I.     CLAIMS OF INTERFERENCE UNDER THE AMERICANS WITH DISABILITIES ACT SHOULD BE GOVERNED BY THE SAME STANDARD AS CLAIMS OF INTERFERENCE UNDER THE FAIR HOUSING ACT.**

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).  In the employment discrimination context, section 504 adopts the substantive standards of Title I of the ADA, 42 U.S.C. §§ 12131–34.  *See* 29 U.S.C. §§ 791(f), 794(d).

The ADA's protection against retaliation, interference, threats, and coercion is found in 42 U.S.C. § 12203.  That section contains two operative provisions.

Subsection (a), entitled "retaliation," states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Because this provision mirrors the anti-retaliation provision of Title VII of the Civil Rights Act, courts use the Title VII *McDonnell Douglas* burden-shifting framework to analyze retaliation claims under the ADA. *Mogenhan v. Napolitano*, 613 F.3d 1162, 1165–66 (D.C. Cir. 2010). Under that standard, "the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." *Baloch v. Kempthorne,* 550 F.3d 1191, 1198 (D.C. Cir. 2008).

Subsection (b) is fundamentally different – and broader – than subsection (a). That subsection provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." *Id*. § 12203(b).

While subsection (a) uses language identical to that in Title VII of the Civil Rights Act, subsection (b) does not. Rather, the language of subsection (b) is

4

nearly identical to the interference provision of the Fair Housing Act. *See* 42 U.S.C. § 3617 ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.").

Notwithstanding the substantial difference in language between subsections (a) and (b), the district court treated them as if they were identical. Stating that subsection (b) "is treated as a retaliation provision," the district court purported to apply the general standard governing retaliation cases. A-179. That approach is incorrect.

The district court overlooked the fundamental principal that divergent language in the statute must be considered. *See Indep. Bankers Ass'n of Am. v. Farm Credit Admin.*, 164 F.3d 661, 667 (D.C. Cir. 1999) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotes omitted). Had Congress intended interference claims to be governed by the same standard, it would have used the same language. The fact that it chose different language that mirrors the FHA rather than Title VII cannot be overlooked.

The district court's approach contradicts the uniform case law. Of the courts of appeals that have addressed the relationship between the two subsections, all have held that subsection (b) operates independently from subsection (a). *See, e.g., Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 788-89 (3d Cir. 1998) (remanding because the district court "did not address 42 U.S.C. § 12203(b)"). In *Brown* , 336 F.3d at 1191, for instance, the Ninth Circuit reversed a district court holding applying "the same general framework to both retaliation and interference claims" under the ADA. The court of appeals explained that the Title VII standards governing claims of discrimination as to "terms or conditions of employment" is inappropriate in a claim for interference under subsection (b). *Id.* at 1190-91; *see also Atchison v. Bd. of Regents of the Univ. Sys. of Georgia*, 2020 WL 733043, *8-*11 (11th Cir. Feb. 13, 2020) (analyzing interference claim separately from retaliation claim).

Significantly, these and other courts recognize that while interfering with a right protected by the statute can be a form of retaliation, interference is a broader concept. The Third Circuit in *Mondzelewski* remanded because the district court "did not address 42 U.S.C. §12203(b), which arguably sweeps more broadly than 42 U.S.C. § 12203(a)." 162 F.3d at 788-89; *see also Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 570 (3d Cir. 2002) (quoting *Mondzelewski*). And in rejecting the Title VII discrimination standard, the *Brown* court observed that the ADA's

interference provision "protects a broader class of persons against less clearly defined wrongs" than the anti-retaliation provision. *Brown*, 336 F.3d at 1192. EEOC itself recognizes that "[i]nterference is broader than retaliation." EEOC Guidance, https://www.eeoc.gov/laws/guidance/retaliation-qa.cfm, q. 19.

That "interference" is broader than retaliatory discrimination in supported by the plain language of the statute. Subsection (a) states that no person shall "discriminate" against any individual because that individual has opposed an unlawful act or participated in an investigation or proceeding under the ADA. 42 U.S.C. § 12203(a). That provision incorporates the general prohibition against "discrimination in terms and conditions of employment," which includes the requirement that the employer take an adverse employment action against the individual. *See* 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4(a); *Brown*, 336 F.3d at 1190.

Subsection (b) does not speak of discrimination in terms and conditions of employment, but instead makes it unlawful to "interfere with" the exercise or enjoyment of "any right granted or protected by this chapter." 42 U.S.C. § 12203(b). The Merriam-Webster Dictionary defines "interfere with" as: "to stop or slow (something): to make (something) slower or more difficult." *Merriam-Webster Online Dictionary*, available at https://www.merriam-webster.com/dictionary/interfere%20with. The Ninth Circuit has defined

"interference" as "the act of meddling in or hampering an activity or process." *Walker v. City of Lakewood*, 272 F.3d 1114, 1128–29 (9th Cir. 2001) (quoting *Webster's Third New Int'l Dict.* 1178 (14th ed.1961)); s*ee also Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 113 (3d Cir. 2017).

It is no answer to say, as the district court did, that this Court has held that the anti-interference provision is treated as a "retaliation" provision. *See* A-179 (citing *Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015)). That mere observation, without more, is not enough to mandate abandonment of the statutory language governing "interference" with "any right granted or protected" by the statute. 42 U.S.C. § 12203(b). Moreover, while this Court has cited subsection (b) in applying the Title VII "adverse action" standard, none of those cases have involved claims of interference. *See, e.g., Minter v. District of Columbia*, 809 F.3d 66, 70 (D.C. Cir. 2015) (allegation that employer terminated employee in retaliation for her accommodation request); *Doak*, 798 F.3d at 1107 (allegation that employer terminated employee in retaliation for her accommodation requests). In fact, to our knowledge this Court has never interpreted or applied the statute in a case alleging interference.

This Court should adopt the approach of the Seventh and Ninth Circuits, both of which have eschewed the Title VII standard in favor of the standard governing the anti-interference provision of the FHA, 42 U.S.C. § 3617. *See*

*Frakes*, 872 F.3d at 550; *Brown*, 336 F.3d at 1191.[1]  That approach makes sense

because the two statutes are virtually identical.  In addition, as the Ninth Circuit

has noted, a committee report preceding the passage of the ADA urged that agency

interpretations of section 3617 be used in promulgating regulations under section

12203(b).  *Brown*, 336 F.3d at 1191 (citing H.R.Rep. No. 485(II), 101st Cong., 2d

Sess. 138 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 421)).

Under that framework, a plaintiff alleging interference must show:  (1) she

engaged in activity statutorily protected by the ADA; (2) she was engaged in, or

aided or encouraged others in, the exercise or enjoyment of ADA protected rights;

(3) the defendants coerced, threatened, intimidated, or interfered on account of her

protected activity; and (4) the defendants were motivated by an intent to

discriminate.  *Frakes*, 872 F.3d at 550-51.

The Ninth Circuit has cautioned that this standard is not "so broad as to

prohibit 'any action whatsoever tha[t] in any way hinders a member of a protected

class.'"  *Brown*, 336 F.3d at 1192 (quoting *Mich. Prot.  & Advocacy Serv. v. Babin*,

18 F.3d 337, 347 (6th Cir. 1994)).  But the court also recognized that the standard

---

[1] The Third Circuit has looked to section 8(a)(1) of the National Labor Relations
Act (NLRA), 29 U.S.C. § 158(a)(1), which makes it an unfair labor practice to
"interfere with, restrain, or coerce employees" in exercising their rights, for
guidance in interpreting subsection (b).  *See Fogleman*, 283 F.3d at 570.  Because
the language of the FHA tracks the language of the ADA anti-interference
provision more closely, this Court should adopt the FHA standard rather than the
NLRA standard.

9

must be applied in light of the broad remedial purpose of the ADA. *Id*. at 1192-93; *see* 42 U.S.C. § 12101(b)(1) ("It is the purpose of this chapter to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."). That is consistent with the FHA, which this Court has recognized "is 'broad and inclusive' and must be given a 'generous construction.'" *Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227, 1234 (D.C. Cir. 1997).

As discussed below, plaintiff's complaint here alleges sufficient facts to state a claim for interference under the proper standard.

## II. THE AMENDED COMPLAINT ADEQUATELY ALLEGES INTERFERENCE UNDER THE STATUTE.

Plaintiff's complaint states a claim under the *Frakes* standard. As the district court recognized (A-179), plaintiff's request for an accommodation is a protected activity under the ADA (the first prong of the test). *See Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005).

Plaintiff also sufficiently alleged that she "was engaged in … the exercise or enjoyment of ADA protected rights," *see Frakes*, 872 F.3d at 550-51. She had requested accommodation pursuant to Section 504 of the Rehabilitation Act and was attempting to pursue that claim. *See* A-20 (¶ 92).

And plaintiff sufficiently alleged that EEOC interfered with the exercise of her rights under the statute. The complaint alleges that "[u]pon learning that

Plaintiff had requested a reasonable accommodation COO Withers contacted Lisa Williams, the HR Director, and instructed her to hold off on processing Plaintiff's request until further notice." A-20 (¶ 94). Plaintiff also alleges that the Deputy Director "interfered with an independent investigator's good faith efforts to develop an impartial factual record on the merits of Plaintiff's claims," and "advised EEOC witnesses that they need not respond to the investigator's attempts to obtain information relevant to Plaintiff's claims." A-11 (¶¶ 34, 35). And she alleges that EEOC "failed to process Plaintiff's reasonable accommodation request in accordance with EEOC's written reasonable accommodation policy." A-20 (¶ 98).

The delay alleged here falls within any reasonable understanding of the term "interfere." As noted above, "interference" includes making something "slower or more difficult," *Merriam-Webster Online Dictionary*, or "the act of meddling in or hampering an activity or process." *Walker*, 272 F.3d at 1128–29. Deliberately causing a delay in the process fits that definition.[2]

The district court incorrectly held that "the law does not recognize a claim concerning the sufficiency of the process itself." A-147, A-148. But subsection (b) applies to "*any right* granted or protected by this chapter." 42 U.S.C. §

---

[2] As far as we are aware, neither the government nor the district court has suggested that plaintiff did not adequately allege that the defendants were motivated by an intent to discriminate.

12203(b) (emphasis added). The statute gives employees both substantive and procedural rights. Nothing in the statutory language (which, as noted, must be interpreted broadly) suggests that interference with the process of pursuing a reasonable accommodation claim is permitted when interference with the initial request for a reasonable accommodation is not.

In holding to the contrary, the district court relied on *Pantazes v. Jackson*, 366 F. Supp. 2d 57, 70 (D.D.C. 2005), in which the district court held that the process of identifying a reasonable accommodation "is not an end in itself." But *Pantazes* did not involve a claim of retaliation or interference. The court merely held that a plaintiff alleging that she was denied reasonable accommodation must show that the process resulted in her failure to get the accommodation. Nothing in *Pantazes* supports the district court's artificial limitation on interference claims.

The district court also erred in holding that the willful delay of plaintiff's accommodation request cannot constitute interference because it was not a "materially adverse action." A-179-180. That holding reflects the district court's failure to differentiate between the retaliation standard governed by 42 U.S.C. § 12203 subsection (a) and the broader "interference" standard governed by subsection (b). It also reflects the district court's incorrect holding that "process" claims are not actionable. Here, the delay (coupled with the refusal to consider

plaintiff's request for transfer) is sufficient to constitute interference under the statute.

The government's arguments on this issue are equally without merit. The government urges the Court to adopt a standard gleaned from guidance on EEOC's website, which states that the statute prohibits "coercing an individual to relinquish or forgo an accommodation to which he or she is otherwise entitled." https://www.eeoc.gov/laws/guidance/retaliation-qa.cfm, q. 19. The government then contends that plaintiff's request for paid leave was unreasonable and therefore she was not coerced into relinquishing a right to which she is "otherwise entitled." EEOC Opening Br. at 27.

The government's argument is flawed on several grounds. First, the government is wrong when it characterizes the guidance as *requiring* that the employee be coerced into relinquishing a right "to which he or she is otherwise entitled." EEOC Opening Br. at 27. In fact, the guidance merely provides some "examples" of interference, that "include", among other things, coercion to "relinquish or forgo an accommodation to which he or she is otherwise entitled."

Second, the government's proposed standard is inconsistent with the statutory language. The government would require proof of coercion to establish interference. But the statute makes it unlawful to "coerce, intimidate, threaten *or* interfere" with the exercise of ADA rights. 42 U.S.C. § 12203(b) (emphasis

added). Requiring an act of coercion to prove interference would render the latter superfluous, an outcome that should be avoided. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 299, n. 1 (2006) ("[I]t is generally presumed that statutes do not contain surplusage").

The government's argument also overlooks the fact that plaintiff requested more than paid leave. She also requested reassignment. *See* Appellant's Opening Br. at 11, 12. The government's contention—that an email sent by plaintiff on January 25, 2013, A-128, disavowed any claim to reassignment—suffers from two fatal flaws. First, the argument goes outside the four corners of the complaint, and thus cannot support the district court's decision granting a motion to dismiss. *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice.").

Second, the government misreads the evidence it cites. At no point does plaintiff disavow her accommodation request. In fact, she makes clear in the email that she has "no problem discussing a reassignment," but states that reassignment was not "the priority" in light of her request for leave. A-128.

Moreover, even if the government were correct that plaintiff must lose something to which she was "entitled," that is the case here. Plaintiff was

"entitled" to a fair and speedy process, free from interference. That is what she alleges was denied here.

Nor does the agency's offer of leave in November 2012 remove any claim of interference. As the government recognized (EEOC Opening Br. at 27), that offer had significant strings attached, requiring plaintiff to relinquish any potential claims she had against EEOC. That was not an accommodation; if anything, it was a settlement offer.

Finally, the government cites *Brown* for the proposition that an ADA plaintiff must "demonstrate that she has suffered a 'distinct and palpable injury'" to maintain a claim. EEOC Opening Br. at 27 (citing *Brown*, 336 F.3d at 1193). But the government overlooks the fact that the *Brown* court found a "distinct and palpable injury" as a result of threats that caused the plaintiff to suffer "short-term memory problems" and to feel "extremely stressed, harassed, and pressured" by her supervisor. 336 F.3d at 1193. Here, plaintiff has alleged that EEOC's reaction to her accommodation request, including its significant delay, exacerbated her already fragile condition, increasing her stress and anxiety. That is sufficient under *Brown*.

## CONCLUSION

For the foregoing reasons, this Court should adopt the standard governing interference complaints under the FHA in determining the standard for a claim of interference under 42 U.S.C. § 12203(b) and 29 U.S.C. § 791(f), and should hold that plaintiff's complaint is sufficient to state such a claim.

Respectfully submitted,

/s/ Matthew M. Collette
Matthew M. Collette
R. Craig Kitchen
Massey & Gail LLP
1000 Maine Ave. SW, Suite 450
Washington, DC 20024
(202) 795-3326
mcollette@masseygail.com
rckitchen@masseygail.com
*Attorneys for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

I certify that:

This brief complies with the type-volume limitation in this Court's order of December 20, 2019, because this brief contains 3,433 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using MS Word Times New Roman 14-point font.

Date:  February 28, 2020

/s/ Matthew M. Collette
Matthew M. Collette
*Attorney for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Matthew M. Collette
Matthew M. Collette
*Attorney for Amicus Curiae*